## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS RYAN, SUSAN RYAN, SEAN GALLAGHER, ASHLEY SULTAN GALLAGHER, MICHELE BURT, CHRISTOPHER CERASUOLO, NANCY DONOVAN, AND LAUREN LADUE, individually and on behalf of others similarly situated, | No. 4:22-cv-40089-MRG  Hon. Margaret R. Guzman |
| *Plaintiffs*, | |
| v. | |
| GREIF, INC., CARAUSTAR INDUSTRIES, INC., THE NEWARK GROUP, INC., MASSACHUSETTS NATURAL FERTILIZER CO., INC., OTTER FARM, INC., SEAMAN PAPER COMPANY OF MASSACHUSETTS, INC., AND 3M COMPANY. | |
| *Defendants*. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT 3M'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 1

LITIGATION AGAINST 3M ACROSS THE COUNTRY ....................................................... 3

LEGAL STANDARD................................................................................................................. 5

ARGUMENT .............................................................................................................................. 6

I.      3M's Breach of Its Duties Proximately Caused Harm to Plaintiffs..................................... 6

      a.      Plaintiffs have sufficiently alleged that 3M manufactured,
                 sold, and/or supplied PFAS to the PMDs, which caused
                 the Plaintiffs' injuries.................................................................................................. 6

      b.      Plaintiffs have alleged it was reasonably foreseeable to
                 3M that waste containing PFOA and PFOS would be
                 discharged into the environment and cause Plaintiffs harm ................................. 11

      c.      Plaintiffs have adequately pleaded that 3M's failure to
                 warn caused Plaintiffs' exposure to PFAS6 and other toxins............................... 13

II.     Even if Alternative Design is Required for a Defective Design Claim,
       Plaintiffs Have Pleaded It ............................................................................................. 16

III.    Plaintiffs' Claims Under M.G.L. ch. 93A Arise Out of Business
       and Commercial Transactions, and Privity Is Not Required ........................................... 19

CONCLUSION......................................................................................................................... 20

# TABLE OF AUTHORITIES

Cases                                                                                                          Page

*A.G. ex rel. Maddox v. Elsevier, Inc.,*
    732 F.3d 77 (1st Cir. 2013) ..............................................................................8

*Barnstable County v. 3M Co.,*
    No. CV 17-40002, 2017 WL 6452245 (D. Mass. Dec. 18, 2017) ................................9, 11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................5, 9

*Carrel v. National Cord & Brid Corp.,*
    447 Mass. 431 (2006) ........................................................................................13

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.,*
    4 F.4th 63 (1st Cir. 2021)....................................................................................5

*Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n,*
    357 F.3d 1 (1st Cir. 2004)..................................................................................16

*Green v. Sirichie Acquisition Co. LLC,*
    No. 22-CV 21-11504-GAO, 2022 WL 4540983 (D. Mass. 2022) ....................................19

*Giordano v. Solvay Specialty Polymers USA, LLC,*
    522 F. Supp. 3d 26 (D.N.J. 2021) ...................................................................4, 14, 15, 18

*Gonzalez v. Johnson & Johnson Co.,*
    No. 20-CV-12057-RGS, 2022 WL 2658975 (D. Mass. July 8, 2022) ...........................16

*Gray v. Evercore Restructuring L.L.C.,*
    544 F.3d 320 (1st Cir. 2008)................................................................................5

*Haglund v. Philip Morris, Inc.,*
    446 Mass. 741, 847 N.E.2d 315 (2006) ................................................................17

*Harlow v. Chin,*
    405 Mass. 697, 545 N.E.2d 602 (1989) ................................................................13

*Hicksville Water Dist. v. Philips Elecs. N.A. Corp.,*
2018 WL 1542670 (E.D.N.Y. March 29, 2018) ................................................11

*Higgins v. Huhtamaki, Inc.,*
No. 1:21-CV-00369-NT, 2022 WL 2274876 (D. Me. June 23, 2022) ..........................10

*In re MBTE Products Liability Litigation,*
725 F.3d 65 at 116-17 (2d Cir. 2013) ................................................11

*Interdigital Tech. Corp. v. OKI Am., Inc.,*
845 F. Supp. 276 (E.D. Pa. 1994) ................................................7

*Kent v. Commonwealth,*
437 Mass. 312, 771 N.E.2d 770 (2002) ................................................12

*Locust Valley Water Dist. v. Dow Chem Co.,*
465 F.Supp.3d 235 (E.D.N.Y. 2020) ................................................11

*Lydon v. Local 103, International Brotherhood of Electrical Workers,*
770 F.3d 48 (1st Cir. 2014) ................................................17

*Maillet v. ATF-Davidson Co.,*
407 Mass. 185 (Mass. 1990) ................................................19

*Malonson v. Arsenault,*
2004 WL 100550 (Mass. Super. Ct. 2004) ................................................19

*McIntyre v. United States,*
447 F. Supp. 2d 54 (D. Mass. 2006) ................................................12

*Middlesex Water Co. v. 3M Co.,*
No. 18CV15366 (EP) (ESK), 2022 WL 16552920 (D.N.J. Oct. 31, 2022)................4, 7, 8

*Moore v. BASF Corp.,*
No. 11–1001, 2011 WL 5869597 (E.D.La. Nov. 21, 2011) ................................7, 8

*Napier v. F/V DEESIE, Inc.,*
454 F.3d 61 (1st Cir. 2006) ................................................12

iii

*Ocasio-Hernandez v. Fortuno-Burset*,
　　640 F.3d 1 (1st Cir. 2011) ................................................................................5

*Or v. Edwards*,
　　62 Mass. App. Ct. 475, 485-486, 818 N.E. 2d 163 (2004) ...............................12

*Parris v. 3M Company*,
　　595 F.Supp.3d 1288 (N.D. Ga. 2022) ......................................................3, 12, 13

*Rae v. Air-Speed, Inc.*,
　　386 Mass. 187, 435 N.E.2d 628 (1982) ............................................................12

*Rock v. Lifeline Sys. Co.*,
　　No. 13-11833-MBB, 2014 U.S. Dist. LEXIS 55611 (D. Mass. Apr. 22, 2014)...............17

*Rodriguez-Reyes v. Molina-Rodriquez*,
　　711 F.3d 49 (1st Cir. 2013)................................................................................16

*Scheuer v. Rhodes*,
　　416 U.S. 232 (1974)...........................................................................................5

*Skinner v. Switzer*,
　　562 U.S. 521 (2011)...........................................................................................5

*Suez Water N.Y., Inc. v. E.I. du Pont de Nemours & Co.*,
　　578 F. Supp. 3d 511 (S.D.N.Y. 2022) ..........................................10, 11, 13, 15

*Swenson v. Yellow Transportation, Inc.*,
　　317 F. Supp. 2d 51 (D. Mass. 2004) ................................................................20

*Taupier v. Davol, Inc.*,
　　490 F. Supp. 3d 430 (D. Mass. 2020) ...............................................................16

*Van Dyke v. St. Paul Fire &Marine Ins. Co.*,
　　388 Mass. 671 (1983) .......................................................................................19

*Weirton Area Water Bd. v. 3M Co.*,
　　No. 5:20-CV-102, 2020 WL 7479974 (N.D.W. Va. Dec. 18, 2020)...................4

*Wickenden v. Saint-Gobain Performance Plastics Corp.*,
No. 117CV1056LEKDJS, 2018 WL 3069193 (N.D.N.Y. June 21, 2018) ......................15

*Wolfe v. Ford Motor Co.*,
6 Mass. App. Ct. 346, 376 N.E.2d 143 (1978) .................................................................14

*Zimmerman v. 3M Co.*,
542 F. Supp. 3d 673 (W.D. Mich. 2021) .................................................................3, 13

Statutes and Other Authorities:

Fed. R. Civ. P. 8(a)(2) ...........................................................................................................5

Fed. R. Civ. P. 12(b)(6) .........................................................................................................5

Fed. R. Civ. P. 15(a)(2) ........................................................................................................18

M.G.L. ch.93A ..........................................................................................................1, 19, 20

Restatement (Second) of Torts § 435 & comment b (1965) ...............................................12

## INTRODUCTION

Plaintiffs Thomas Ryan, Susan Ryan, Sean Gallagher, Ashley Sultan Gallagher, Michele Burt, Christopher Cerasuolo, Nancy Donovan, and Lauren Ladue (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated, who were injured by the contamination of toxic per- and polyfluoroalkyl substances ("PFAS") in and around Westminster, Massachusetts by Defendant 3M Company ("3M") and others. 3M produced, marketed, and sold to other Defendants the PFAS "forever chemicals" that have contaminated Plaintiffs' property and their bodies. 3M's central contention is that its conduct has not proximately caused Plaintiffs' injuries. 3M also argues that Plaintiffs have failed to plead an alternative design under the design defect claim and that Plaintiffs' M.G.L. ch.93A claim fails for lack of privity. The motion should be denied. The SAC easily alleges causation, with facts notably similar to those found sufficient in numerous other cases against 3M; amply discusses 3M's knowledge of safer alternatives (which may not even be a requirement for a design defect claim); and clearly alleges claims in the business or commerce context under Chapter 93A, a statute which does not require transactional privity.

## BACKGROUND

As set forth in detail in the SAC,[1] this case arises out of the widespread contamination of PFAS-containing chemicals in and around Westminster, Massachusetts, caused by 3M, together with other Defendants. Of the two main types of PFAS found in Plaintiffs' wells and blood, 3M is the dominant global producer of one, PFOA, manufacturing at least eighty-five (85%) percent, and it is the *only* manufacturer in the United States of the other, PFOS. *SAC* ¶¶ 62–63. Thus, Plaintiffs allege 3M manufactured and sold to the Paper Manufacturing Defendants ("PMDs") the PFAS that contaminated Plaintiffs' and Class Members' persons and properties. *Id.* ¶ 16.

---

[1] To the extent a term is not defined herein, it shall have the same meaning set forth in the SAC.

As the United States' largest manufacturer of PFAS, 3M knew or should have known of the inherent dangers of PFAS. In fact, as the SAC makes clear, 3M has become increasingly aware over several decades of the long-lasting effects of PFAS on the environment and the human body. *Id.* ¶¶ 63–88. For example, by 1978 – *over 40 years ago* – 3M had discovered that its employees' blood contained elevated organic fluorine levels due to exposure to fluorinated surfactants such as PFOA. *Id.* ¶¶ 65–66. As a result, 3M commissioned studies throughout the 1980s and 1990s, which repeatedly confirmed the toxic effects of PFAS chemicals on the liver and immune system of its workers, and the clear link to cancer. *Id.* ¶¶ 66–67, 71–76. Through these tests and others, 3M was fully aware that PFAS exposure, even at low levels, absorbs into the blood, kidney, and liver and can lead to the development of cancers and other serious diseases. *Id.* ¶¶ 25–29, 32–39.

3M was also particularly aware that PFAS, as "forever chemicals," will migrate through soil and contaminate underground water and property. *Id.* ¶¶ 25–29. Data 3M itself provided to the EPA indicated that 3M knew that PFAS chemicals are "very persistent" and pose a long-term risk to the environment. *Id.* ¶ 63. This awareness was evident when 3M phased out its production of PFOS in the early 2000s, after it was found responsible for contaminating over 100 square miles of groundwater – the source of residential drinking water for over 125,000 Minnesotans – in the areas around a 3M facility in Minnesota. *Id.* ¶¶ 83, 88.

Despite its awareness of these risks, 3M caused Plaintiffs' properties and bodies to be contaminated with PFAS by, among other things, (1) negligently manufacturing and selling PFAS to the PMDs, (2) failing to adequately warn, advise, and/or provide sufficient instructions of the dangers of its PFAS products, either to PMDs purchasing their products or to Plaintiffs and other foreseeable users, (3) neglecting to monitor the improper way its purchasers, including PMDs, used its PFAS, and (4) producing PFAS products defective in design and unreasonably dangerous.

*Id.* ¶¶ 488–90, 498, 500–02, 511–14. As could have been expected, this conduct resulted in Plaintiffs' and Class Members' (1) loss of enjoyment of their property, as they can no longer drink, cook, bathe, or otherwise use their water, (2) diminution of property value and an impaired ability to sell their PFAS-contaminated homes, and (3) subcellular changes and increased risk of deadly diseases, as demonstrated by levels of PFAS found in Plaintiffs' blood results elevated well above background levels. *Id.* ¶¶ 106–108, 183–89, 190–92. 3M has caused considerable harm to Plaintiffs and Class Members, and its attempt to escape liability by moving to dismiss the well-pleaded allegations against it should be rejected.

## LITIGATION AGAINST 3M ACROSS THE COUNTRY

3M is no stranger to PFAS-related litigation, and has moved in other cases to dismiss the same claims that Plaintiffs assert here – including negligence, breach of warranty for failure to warn, breach of warranty for defective design, and medical monitoring. In cases across the country, 3M was unsuccessful in its attempt to dismiss those claims, including for example:

*Negligence*. In *Zimmerman v. 3M Co.,* the court clearly held that 3M, as a manufacturer, has a duty towards foreseeable plaintiffs that is "not predicated on direct manufacturer/plaintiff contact." 542 F. Supp. 3d 673, 678, 681 (W.D. Mich. 2021) (denying 3M's motion to dismiss where 3M sold PFAS to another defendant, whose discharge contaminated plaintiffs' drinking water and property; further noting that because "Plaintiffs were foreseeable victims of PFAS contamination, a relationship existed between Plaintiffs and 3M sufficient to impose a duty"). The fact that 3M, even without directly selling to a plaintiff, nevertheless has "a duty to protect third parties from reasonably foreseeable harm that occurs during the normal use of their products" was also a central holding in both *Parris v. 3M Company*, 595 F.Supp.3d 1288, 1328, 1330–31 (N.D. Ga. 2022) (duty arose where 3M and other "Manufacturing Defendants continuously supplied

PFAS to [a third party] with knowledge that the chemicals were unlikely to be made reasonably safe in their regular use and could foreseeably contaminate surface waters and downstream water supplies") and in *Middlesex Water Co. v. 3M Co.,* No. 18CV15366 (EP) (ESK), 2022 WL 16552920, at *5–6 (D.N.J. Oct. 31, 2022) (it was foreseeable to 3M that a third-party's use and disposal of 3M's PFAS would contaminate the water affecting plaintiffs).

*Breach of warranty for failure to warn*. As the court found in *Weirton Area Water Bd. v. 3M Co.,* 3M's PFAS chemicals were simply "not reasonably safe for [their] intended use," and 3M knew or should have known of the dangers of PFAS. No. 5:20-CV-102, 2020 WL 7479974, at *4 (N.D.W. Va. Dec. 18, 2020) (denying motion to dismiss the claim where plaintiffs alleged "numerous examples" of 3M's "actual or constructive knowledge of the harm posed by PFAS to human health and the environment," where 3M's "denial, minimization and active concealment of such risks" meant that there was "unequal knowledge as between [3M] and third party purchasers and consumers," and where "injuries resulted from the failure to warn").

*Breach of warranty for defective design*. The court in *Weirton* also held that it was foreseeable to 3M "that PFAS and/or products containing PFAS was going into the water." *Id.* at *4 (denying motion to dismiss the claim where plaintiffs sufficiently alleged that 3M's PFAS chemicals and/or products containing PFAS were "not reasonably safe for [their] intended use" and that 3M "proximately caused the contamination" of the water system).

*Medical Monitoring*. The court in *Giordano v. Solvay Specialty Polymers USA, LLC* rejected dismissal of the medical monitoring claim, where it was alleged that 3M's actions caused plaintiffs to be at risk for serious injuries and diseases related to their consumption, ingestion, and exposure to elevated levels of PFAS. 522 F. Supp. 3d 26, 34–35 (D.N.J. 2021) ("[a]t this stage in the case, Plaintiffs have alleged sufficient facts to support their claims [for medical monitoring]

against Defendants regarding their release of PFAS, which Plaintiffs plead are carcinogenic, into the environment and contaminating Plaintiffs' water supply"). The facts in that case, like the others above, were remarkably analogous to those here.

Thus, similar claims against 3M have already been permitted by courts around the country, many applying similar standards to Massachusetts, for the same conduct alleged here – as is sufficiently set forth by Plaintiffs in the SAC.

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint need not contain detailed factual allegations. *See Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008); *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021) ("Rule 12(b)(6) motions... are always facial, not factual, challenges to the complaint."). A plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See* Fed. R. Civ. P. 8(a)(2); *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A pleading is sufficient where the allegations – taken as true, as they must be – raise a claim to entitlement to relief, even if the pleader's ultimate right to a recovery might appear "very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *accord Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (complaint need not contain "an exposition of [plaintiff's] legal argument"; nor must it "pin plaintiff's claim for relief to a precise legal theory"). Thus, a claim should not be dismissed unless it is "beyond doubt" that the plaintiff cannot prove plausible facts to support it. *Twombly,* 550 U.S. at 556.

## ARGUMENT

### I.     3M's Breach of Its Duties Proximately Caused Harm to Plaintiffs.

3M contends, as to all claims, that Plaintiffs fail to allege that 3M's conduct proximately caused Plaintiffs' injuries. *MTD* at 6. Specifically, 3M argues the SAC does not allege (1) which PFAS-containing products 3M sold and when, (2) that 3M had knowledge of, control over, or participated in, the PMDs' waste-disposal practices, (3) or that an adequate warning from 3M would have changed the PMDs' waste-disposal practices. *Id.* at 6–13. 3M's arguments consist largely of labeling Plaintiffs' allegations as "bald legal conclusions." Yet, as detailed below, Plaintiffs have more than exceeded the plausibility standard required for pleading proximate causation.

#### a.     Plaintiffs have sufficiently alleged that 3M manufactured, sold, and/or supplied PFAS to the PMDs, which caused the Plaintiffs' injuries.

3M's first argument as to proximate cause readily fails.[2] 3M asserts, without any supporting legal authority, that the SAC is deficient because Plaintiffs do not allege facts "to establish that the PFAS in the soil and water at Plaintiffs' homes was manufactured by 3M" such as (1) which of the "thousands of PFAS chemicals" or products 3M sold to the PMDs, or (2) when such sales occurred. *MTD* at 7-8.

These contentions are without basis. Plaintiffs have expressly alleged that 3M sold PFAS to the PMDs, *SAC* ¶ 16; that 3M is the dominant global producer of PFOA (manufacturing at least 85% of PFOA worldwide), *id*. ¶ 62; that 3M is the *only* manufacturer of PFOS in the United States, *id*. ¶ 63; that the PMDs used PFAS chemicals in their production of products and byproducts, *id*. ¶¶

---

[2] 3M claims that "Plaintiffs cannot (and do not) claim to have sued all of the possible upstream manufacturers and sellers of PFAS or PFAS products," *MTD* at 7, but that is irrelevant. Plaintiffs have sued 3M as the manufacturer that they presently have reason to believe provided PFAS to the PMDs. And in particular, Plaintiffs have sued the chemical company that is the only manufacturer of a critical PFAS found on Plaintiffs' property and in their bodies, PFOS. Plaintiffs expect discovery (including 3M's and the PMD's sales records and receipts) will only further confirm this.

110-113; and that as MassDEP's investigation specifically found, the contamination in and around Westminster contained elevated levels of PFOA and PFOS (which, again, 3M manufactures 85% and 100%, respectively).[3] Plaintiffs have further alleged that heightened levels of these two forms of PFAS were found specifically in Plaintiffs' blood. Plaintiff Thomas Ryan's blood had PFOS levels of 91, and Plaintiff Susan Ryan's blood had PFOS levels of 200 – well above the "normal" (or background) level of 13. *Id.* ¶¶ 186-87. Additionally, blood tests revealed PFOA levels in Plaintiffs of 37.7 in Nancy Donovan, 28 in Susan Ryan, and 15 in Thomas Ryan – again, far above the "normal" level of 1.9. *Id.* ¶¶ 186-88.

Plaintiffs thus have clearly alleged sufficient facts for this pleading stage – facts which establish 3M as the manufacturer of the PFAS that was found on Otter Farm and in Plaintiffs' wells and blood. Plaintiffs are not required to name the specific products, places, or dates on a motion to dismiss. *See, e.g., Moore v. BASF Corp.*, No. 11–1001, 2011 WL 5869597, at *6 (E.D.La. Nov. 21, 2011) (unnecessary for the plaintiff to name specific products or even specific places or dates where the alleged exposure to benzene-containing products took place so long as the facts pleaded allow the court to draw the plausible inference of defendant's negligence); *Interdigital Tech. Corp. v. OKI Am., Inc.,* 845 F. Supp. 276, 283 (E.D. Pa. 1994) (plaintiff is required only to make "a short and plain statement of the claim showing that the pleader is entitled to relief" but "need not identify, in the complaint, specific products by name, so long as they are sufficiently identified in some way"); *Middlesex Water Co. v. 3M Co.,* No. 18CV15366 (EP) (ESK), 2022 WL 16552920, at *7 (D.N.J. Oct. 31, 2022) (with respect to negligence, "[3M's] duty to warn foreseeable users is

---

[3] More specifically, MassDEP determined that water sources in and around Westminster contained "**a PFOA concentration of 1,250 ppt** (over 60 times higher than the 20 ppt designated as the Imminent Hazard Level by MassDEP) **and a PFOS concentration of 1,980 ppt** (over 90 times the 20 ppt designated as the Imminent Hazard Level by MassDEP)." *SAC* ¶¶ 110-14 (emphasis added).

not limited to one product, but rather, it reasonably extends to any products containing PFAS that Defendant places into the market, and which Defendant knows or has reason to know contain PFAS").

3M's demand for a showing of precisely *when* any sale of 3M's products occurred is also not required at this pleading stage. *See, e.g., Moore,* 2011 WL 5869597, at *6. 3M claims that "[w]hen any sale of 3M's products occurred" is "a critical fact" because they "could have happened decades ago before the [PMDs] allegedly began leaving their waste at the MassNatural site." *MTD* at 6-8. Yet if such sales did occur decades ago, that would not somehow invalidate Plaintiffs' claims. Because PFAS are "forever chemicals," *any* sales of PFOA or PFOS by 3M to the PMDs (whether 2 years ago or 20 years ago) that contaminated Plaintiffs' water supply establishes proximate causation.[4] Regardless, this a factual argument not suited for a motion to dismiss. *See Middlesex Water Co. v. 3M Co.,* No. 18CV15366 (EP) (ESK), 2022 WL 16552920, at *3 (D.N.J. Oct. 31, 2022) (noting that a plaintiff satisfies its burden of establishing proximate cause "by introducing evidence which affords a reasonable basis for the conclusion that it is 'more likely than not' that the defendant's act or omission was a cause in fact of damages," and that "[t]ypically, whether proximate cause can be established is a genuine issue of material fact best resolved by a jury"). As discovery has yet to be conducted, Plaintiffs are not yet privy to invoices or sales records indicating precise product sales, and 3M's introduction of its own "facts" to counter Plaintiffs' well-pled complaint should not be considered. *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77 at 81-82

---

[4] As alleged in the SAC, PFAS, including PFOA and PFOS, "persist in the environment indefinitely without breaking down due to the strength of their multiple carbon-fluorine bonds." *SAC* ¶ 26. And, Plaintiffs have more than alleged that 3M's sales of PFAS, including PFOA and PFOS, to the PMDs throughout their decades-long use and disposal of these chemicals resulted in the contamination of Plaintiffs' wells. *Id.* ¶ 118.

(citing *Twombly*, 550 U.S. at 556) (factual assertions must include "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim).

3M also mischaracterizes the SAC as relying on a market share theory of liability – *even though Plaintiffs have not plead a market share theory of liability*. Rather, Plaintiffs expressly allege that it is 3M's sale of PFAS – of which 3M sells 100% of PFOS and at least 85% of PFOA – to the PMDs which led to the contamination of Plaintiffs' water supply and their bodies. That 3M was the only entity making PFOS, and that it made 85% of the PFOA on the market, only serves to demonstrate the SAC's allegation that the PFAS harming Plaintiffs was made by 3M.

The cases 3M cites to argue that proximate causation is lacking are simply inapposite. For example, the pleadings in *Barnstable County* offered no factual basis whatsoever to connect the *five* defendant-manufacturers' conduct – along with 49 additional John Doe entities as defendants – to the alleged contamination and injury. *Barnstable County v. 3M Co.*, No. CV 17-40002, 2017 WL 6452245, *1, 3 (D. Mass. Dec. 18, 2017). It was for this reason that the court dismissed the complaint without prejudice – *i.e.*, for "***failure to draw a connection*** between each specific defendant's products and the contamination at the Property" because the complaint was devoid of allegations as to which of the five manufacturers' products were used or how each caused contamination. *Id.* at *24, 26 (emphasis added). In contrast, the pleadings here unambiguously identify that there is *one* manufacturer – 3M – who sold PFAS to the PMDs who disposed of that 3M-acquired PFAS to contaminate Plaintiffs' water supply. *SAC* ¶¶ 16, 488, 494-95, 505, 509.[5]

---

[5] Plaintiffs also have pinpointed the specific type of operations of each Defendant and the location of those operations; alleged those operations used PFAS and generated toxic byproducts containing PFAS, including PFOA and PFOS manufactured and supplied by 3M specifically; and alleged that each of the PMDs disposed of PFAS-laden byproducts into the environment through various means that facilitated their migration to Plaintiffs' lands and wells, causing their injuries.

The bases for dismissal in the New York case, *Suez Water,* where the allegations were similarly devoid of even rudimentary factual support, are also not present here. In *Suez Water,* because Plaintiffs' contamination theory was not tied to the disposal of waste at a particular location or from any identified source, the court found that there was "no basis to conclude that the quantities of [PFAS] sent into New York by the . . . Defendants and disposed of by unknown third parties were sufficient to be a 'substantial factor' in any pollution of Plaintiff's water systems." *Suez Water N.Y., Inc. v. E.I. du Pont de Nemours & Co.,* 578 F. Supp. 3d 511, 542-43 (S.D.N.Y. 2022) (where plaintiffs' water systems were in one small portion of the state, and there was no allegation that defendant's products were even used in the vicinity of the plaintiffs' facilities, no causal link can be inferred from defendants' commercial activities in New York as a whole). *See also Higgins v. Huhtamaki, Inc.,* No. 1:21-CV-00369-NT, 2022 WL 2274876 (D. Me. June 23, 2022) (contrasting the facts in *Suez Water* in denying dismissal for claims related to PFAS contamination involving paper mills and noting that "to explain the theory [alleged by the plaintiffs in *Suez Water*] is to demonstrate how attenuated the causal chain was in that case."). Here, by contrast, Plaintiffs allege, with specificity, that their damages were caused by PFAS, including PFOA and PFOS, and that 3M manufactured and supplied it to the PMDs. Thus, the source of the PFAS contamination is known and the parties responsible identified, as is the mechanism by which Plaintiffs' properties and bodies became contaminated. *SAC* ¶¶ 89-135.

In contrast with the tangential cases 3M cites, there are myriad other cases across the country involving water contamination, several with 3M as the defendant, specifically on point. The judges in those cases where claims were brought against manufacturers who either operated facilities within the plaintiffs' water district or who sold contaminants to customers who operated proximate to the contaminated water, have consistently denied motions to dismiss, emphasizing

that causation is "generally a question for the finder of fact." *Locust Valley Water Dist. v. Dow Chem Co.,* 465 F. Supp. 3d 235, 240 (E.D.N.Y. 2020) (*quoting Hicksville Water Dist. v. Philips Elecs. N.A. Corp.,* 2018 WL 1542670 (E.D.N.Y. March 29, 2018) and holding that plaintiffs sufficiently alleged causation where defendants, as primary manufacturers of the chemical at issue, marketed, sold, or distributed their products in the region of plaintiffs' wells while they knew or should have known doing so would lead to well-water and groundwater contamination in the region). *See also In re MBTE Product Liability Litigation,* 725 F.3d 65, 116-17 (2d Cir. 2013) (affirming jury finding of substantial-factor causation despite plaintiff not tracing individual chemical particles back to defendant).

Plaintiffs here, unlike in *Barnstable* and *Suez,* but similar to other cases across the country (many against 3M) where claims were permitted in the water contamination context, have supplied a factual basis that 3M actually caused Plaintiffs' harm. This factual basis can further be supported with discovery, but it is sufficient for this stage. *See, e.g., Locust Valley Water Dist.*, 465 F.Supp.3d at 241-42 (certain things are unknown at the motion to dismiss stage such as "whether plaintiffs ultimately will be able prove that [fungible contaminants] from defendants' products are in their wells").

> **b.** **Plaintiffs have alleged it was reasonably foreseeable to 3M that waste containing PFOA and PFOS would be discharged into the environment and cause Plaintiffs harm.**

In defending against Plaintiffs' negligence and failure to warn claims, 3M seeks to hold Plaintiffs to a causation standard that simply does not exist in Massachusetts, curiously failing to cite any case supporting the "knowledge, control, and participation in" standard 3M seeks to propound (or invent). *MTD* at 10-11. Under the standard actually followed in Massachusetts (and many other jurisdictions) "negligent conduct is the proximate cause of an injury . . . [if] the injury

to the plaintiff was a foreseeable result of the defendant's negligent conduct." *Kent v. Commonwealth*, 437 Mass. 312, 320, 771 N.E.2d 770 (2002).[6] And a result is foreseeable if it was not highly "extraordinary." *See Rae v. Air-Speed, Inc.*, 386 Mass. 187, 193, 435 N.E.2d 628 (1982); *Or v. Edwards*, 62 Mass. App. Ct. 475, 485, 818 N.E. 2d 163 (2004); see also Restatement (Second) of Torts § 435 & comment b (1965).

Plaintiffs must therefore only plead (and have pled here) that it was ***reasonably foreseeable*** to 3M that waste containing PFAS, including PFOA and PFOS, would be discharged into the environment and contaminate nearby land and water supplies. *SAC* ¶¶ 485-92. Indeed, as homeowners living in and around the manufacturing and disposal facilities of purchasers of 3M products, Plaintiffs could not be farther from "unforeseeable" as victims of the leaching of 3M's forever chemicals.

That Plaintiffs are foreseeable victims is not only obvious as a logical proposition but has been held by courts across the country examining 3M's conduct in similar situations. In *Parris v. 3M Co.,* for example, a parallel case applying a foreseeability standard substantially similar to that of Massachusetts, a Georgia district court denied 3M's attempt to dismiss on proximate causation grounds where 3M (and others) manufactured and supplied PFAS to the owner and operator of a textile mill to make water and stain-resistant fabrics, and that PFAS then contaminated a nearby watershed. *Parris v. 3M Co.,* 595 F. Supp. 3d 1288, 1333 (N.D. Ga. 2022). The court held that it was foreseeable to 3M, who has knowledge that these chemicals are toxic and persistent, that third parties would use and dispose of PFAS in a manner that would contaminate surface waters. *Id.* at

---

[6] 3M attempts to distance itself from the PMDs' "illegal" conduct. *MTD* at 10. However, "[u]nder Massachusetts law, criminal conduct is not an intervening or superseding cause so long as it is foreseeable." *McIntyre v. United States*, 447 F. Supp. 2d 54, 112 (D. Mass. 2006). Additionally, "[t]he issues of foreseeability and superseding cause are properly for the jury to decide when there may be reasonable differences in opinion." *Napier v. F/V DEESIE, Inc*., 454 F.3d 61, 69 (1st Cir. 2006).

1333. Similarly here, it was entirely foreseeable to 3M that its manufacture and supply of PFAS chemicals to the PMDs would be used in a manner that would contaminate surface waters and be discharged into water and ground soil on Otter Farm, contaminating the environment and consumer products in and around the area. *SAC* ¶¶ 61-88, 485-91, 497-502.

In an attempt to deflect from the *Parris* decision, and others like it, 3M again falls back to *Suez* to argue that Plaintiffs have failed to establish proximate causation. *MTD* at 11 (citing the holding in *Suez* that "'Plaintiff's allegations of injury caused through the agency of end users' was 'speculative and attenuated' and insufficient to survive a motion to dismiss"). However, as already established above, Plaintiffs were entirely foreseeable victims. *See Zimmerman v. 3M Co.,* 542 F. Supp. 3d at 678, 681 (denying 3M's motion to dismiss where 3M sold PFAS to another defendant, whose employees' discharge of PFAS into the environment resulted in the contamination of plaintiffs' drinking water and property; noting that because "a relationship existed between Plaintiffs and 3M sufficient to impose a duty").

> ### c. Plaintiffs have adequately pleaded that 3M's failure to warn caused Plaintiffs' exposure to PFAS6 and other toxins.

Finally, as to Plaintiffs' negligence and failure to warn claims, 3M argues that Plaintiffs have failed to allege how a warning to the PMDs of what, in 3M's view, "those Defendants *already* knew or should have known…and intentionally and recklessly ignored" would have averted the alleged injuries.[7] *MTD* at 18. In Massachusetts, however, "the law permits an inference that a warning, once given, would have been followed." *Harlow v. Chin*, 405 Mass. 697, 702-03,

---

[7] The sophisticated user doctrine is an affirmative defense in product liability actions that permits a manufacturer to avoid liability for failing to warn another of a risk or hazard which that other party understood and appreciated to the same extent as any warning would have provided. *Carrel v. National Cord & Brid Corp.,* 447 Mass. 431, 441 (2006). As it is not the Plaintiffs' burden to plead facts to rebut a defendant's potential affirmative defenses, this argument is wholly inappropriate on a motion to dismiss.

545 N.E.2d 602 (1989). If a warning should have been given, the burden is on "the defendants to come forward with evidence tending to rebut such an inference." *Wolfe v. Ford Motor Co.,* 6 Mass. App. Ct. 346, 352, 376 N.E.2d 143 (1978). Thus, 3M cannot shift this responsibility to Plaintiffs as the basis for dismissal.

Rather, as an inventor and manufacturer of PFAS, 3M had superior knowledge of the magnitude of these chemicals' toxicity and danger, including nonobvious dangers. This knowledge was rooted in decades of 3M-commissioned research studying the effects of the chemicals it was creating, including on its *own workers* as well as on animals and the environment, *id.,* ¶¶ 61-88, 486, 499 – findings which 3M concealed from the public and government regulators for many years. *Id.* ¶¶ 67, 79. Despite its extensive knowledge of these dangers, 3M failed to adequately warn and provide sufficient instructions to PFAS purchasers such as the PMDs to avoid discharging PFAS and other toxins into the environment, where it was likely to enter the soil, air, and water. *Id.* ¶¶ 487-88, 496-98. 3M failed to provide such a warning even though it knew or should have known that its sale of PFAS to the PMDs, undertaken without adequate precautions, instructions, or warnings disclosing the effects of PFAS, would result in the unsafe disposal of PFAS, and that such disposal near residential communities would be unreasonably dangerous. *Id.* ¶¶ 486-88, 496-97, 501-02.

These allegations are not "bare" and are more than sufficient to meet the requisite pleading standards. *See, e.g., Giordano v. Solvay Specialty Polymers USA, LLC,* 522 F. Supp. 3d 26, 40 (D.N.J. 2021) ("Plaintiffs do not simply provide a legal recitation of the elements of a failure to warn claim and design defect claim, but support those elements with allegations that 3M's own studies revealed the harmful nature of the PFAS it manufactures and sells," yet "3M has not warned its customers and ultimately the public at large, including Plaintiffs, of those

dangers, causing them harm," and "that despite its awareness of the harm PFAS products cause, 3M has not endeavored to alter its products to be less harmful").

Thus, as made clear by the SAC, a warning by 3M of the extent of the risk involved in using and disposing of PFAS would have enabled the PMDs to ensure its safe disposal and prevent the contamination of Plaintiffs' properties and persons. *See Wickenden v. Saint-Gobain Performance Plastics Corp.*, No. 117CV1056LEKDJS, 2018 WL 3069193, at *9 (N.D.N.Y. June 21, 2018) (3M had duty to warn users of PFAS to protect surrounding water supplies because 3M was "in a superior position to know of and warn purchasers and users of PFOA of the hazards associated with this substance, [] the economic impact of recognizing such a duty would not be overly burdensome, and [] 3M's [] liability would not be infinite or indeterminate").

Finally, 3M contends that Plaintiffs do not allege "any facts regarding what warnings should have been given." *MTD* at 17 (citing *Suez* at 563). Unlike in *Suez*, however, Plaintiffs here have in fact alleged what warnings should have been given (*e.g.,* warning the PMDs as to the dangers of 3M's PFAS) and that those warnings would have averted the harm that occurred. *SAC* ¶¶ 486-89, 496-99, 501-03, 515. Short of drafting an effective warning on 3M's behalf, Plaintiffs in their SAC have laid out what warnings should have been given (*SAC* ¶¶ 488-89) with sufficient detail to allege that 3M's failure to warn the PMDs proximately caused Plaintiffs' harm. *Giordano v. Solvay Specialty Polymers USA, LLC,* 522 F. Supp. 3d 26, 40 (D.N.J. 2021) ("At this stage in the case, without the benefit of discovery, especially where 3M is likely in possession of most of the information relative to Plaintiffs' claims, Plaintiffs cannot be faulted for not articulating the precise wording of a 3M warning label or describing a specific alternative design.").

Because the robust factual allegations in Plaintiffs' SAC are more than adequate to plead 3M's failure to warn, in support of negligence and breach of warranty for failure to warn claims, 3M's motion to dismiss on this ground should be denied.[8]

## II. Even if Alternative Design is Required for a Defective Design Claim, Plaintiffs Have Pleaded It.

3M asserts that Plaintiffs' breach of warranty for defective design theory fails to plead alternative design. 3M overstates what is required of a plaintiff to plead a design defect and understates Plaintiffs' pleadings regarding feasible alternatives. The First Circuit is unsettled as to whether a safer alternative is a requisite element of a design defect claim. *Gonzalez v. Johnson & Johnson Co.,* No. 20-CV-12057-RGS, 2022 WL 2658975 (D. Mass. July 8, 2022) ("Massachusetts product liability law may tolerate a finding of design defect even in the absence of evidence supporting the existence of a feasible alternative design." (internal citations omitted)). Regardless of this ambiguity, the Plaintiffs needn't *prove* their claims in their initial pleading, and "…[w]here the First Circuit has said that a plaintiff may not be required to prove the existence of a safer alternative design to prevail on a negligent design claim, the absence of an allegation of such an alternative in the First Amended Complaint is not a basis for dismissal." *Taupier v. Davol, Inc*., 490 F. Supp. 3d 430, 446 (D. Mass. 2020); *see also Rodriguez-Reyes v. Molina-Rodriquez*, 711 F.3d 49, 51 (1st Cir. 2013) ("The prima facie standard is an evidentiary standard, and there is no need to set forth a detailed evidentiary proffer in a complaint.").  And, while 3M tries to shift the goal posts by asserting that "Plaintiffs fail to allege facts suggesting that a reasonable alternative design **was available**[,]" *MTD* at 13 (emphasis added), that is not the correct standard in

---

[8] Should the Court find the pleadings deficient in any respect, Plaintiffs respectfully request a dismissal without prejudice, as amendment would certainly not be futile. Where 3M's arguments go to the sufficiency of the pleadings and not the availability of a remedy under Massachusetts law, amendment gives Plaintiffs an opportunity to remedy any deficiency. *Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n,* 357 F.3d 1 (1st Cir. 2004).

Massachusetts. "A plaintiff need only convince the jury that a safer alternative design was feasible, not that any manufacturer in the industry employed it or even contemplated it." *Haglund v. Philip Morris*, Inc., 446 Mass. 741, 747, 847 N.E.2d 315 (2006).

Regardless, Plaintiffs have more than met the pleading standard for a design defect claim, including reference to safer alternatives. To start, the SAC alleges that "Defendant 3M knew or should have known about reasonably safer and feasible alternatives to PFAS and other toxins." *SAC* ¶ 514. And while 3M pretends this is the only relevant language, it is not. Rather, the SAC chronicles 3M's "phase out" of the dangerous PFAS variant, PFOS, noting that it began in the year 2000, well before 3M even considered the full phase out of PFAS that it contemplates today. *Id.* ¶ 63. As Plaintiffs allege:

> In May of 2000 the EPA announced that 3M would begin to phase out production of PFOS, noting that "3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term[.]

*Id.* Defendant ignores the obvious logical implications of these alleged facts – *i.e.,* that a chemical being phased out is necessarily one for which there is a feasible alternative design. Moreover, the SAC then cites to the EPA's press release further discussing this phase out, a release which states "…3M… today announced that it will voluntarily phase out **and find substitutes** for perflouroctanyl sulfonate (PFOS) chemistry… EPA supports the company's plans to phase out **and develop substitutes** by year's end for the production of their involved products." *EPA Press Release* cited in the *SAC* at fn 17 (emphasis added).[9]

---

[9] Plaintiffs may refer to, and this Court may rely upon, documents incorporated by reference into the Complaint. *Lydon v. Local 103, International Brotherhood of Electrical Workers*, 770 F.3d 48, 53 (1st Cir. 2014); and *Rock v. Lifeline Sys. Co.*, No. 13-11833-MBB, 2014 WL 1652613, at *31-32 (D. Mass. Apr. 22, 2014).

In detailing a phase out plan for PFOS that would necessarily involve an alternative chemical design, and then citing an EPA press release announcing 3M's plan to "develop substitutes" by the end of 2001, some 22 years prior to the filing of this SAC, Plaintiffs have more than pleaded that there were alternative designs 3M could have used to, *e.g.,* give paper a slick quality without the cancer-causing effects of the PFAS it sold. This is particularly adequate on a motion to dismiss, where Plaintiffs do not have the benefit of an evidentiary record. See *Giordano,* 522 F. Supp. 3d at 40 ("At this stage in the case, without the benefit of discovery, especially where 3M is likely in possession of most of the information relative to Plaintiffs' claims, Plaintiffs cannot be faulted for not articulating the precise wording of a 3M warning label or describing a specific alternative design.").

Finally, were this Court to take the position not only that an alternative design is required under Massachusetts law – but also that the SAC does not meet the low bar for pleading that an alternative design could have been feasible, then Plaintiffs should be granted leave to file supplemental or amended pleadings under Fed. R. Civ. P. 15(a)(2). This is particularly so where, as here, Plaintiffs can make ample allegations regarding the history of safer alternatives.[10]

---

[10] Plaintiffs offer the following facts, acknowledging they are outside the pleadings and solely for the proposition that, were the Court to find it necessary, supplemental or amended pleadings here would not be futile. While the subject of safer alternatives will be a science-heavy discussion debated by experts for both sides, the fact remains that the industry has sought and achieved safer alternatives to PFOS, PFOA, and other PFAS chemistries. Those efforts include the short chain PFAS referred to as GenX chemistries, and perfluorobutane sulfonic acid (PFBS), which 3M touted as safe. While it may be that short chain PFAS are *less* toxic and/or safer, they are not safe. Other safer and less toxic alternatives to PFAS, particularly those utilized in the paper industry, include biopolymer (plant based) chemistries which impart the same or similar grease, water and stain resistant properties to paper that were sought from PFAS polymer resins and proprietary nonfluorinated coatings. Suffice it to say Plaintiffs can plead additional factual details about specific chemistries and products that are safer alternatives to PFAS, including PFOS and PFOA.

### III. Plaintiffs' Claims Under M.G.L. ch. 93A Arise Out of Business and Commercial Transactions, and Privity Is Not Required.

According to 3M, Plaintiffs' claims fail because "…they do not allege that they were injured because of any transactional relationship **with** 3M…" *MTD* at 15 (emphasis added). That statement is not an accurate statement of the law. Massachusetts is clear that plaintiffs do not need to have purchased a product directly from a defendant to sufficiently allege a claim of unfair and deceptive trade practices under M.G.L. ch. 93A. *Van Dyke v. St. Paul Fire &Marine Ins. Co.,* 388 Mass. 671 (1983) (93A provides a cause of action to "any person… who has been injured by another person's use or employment, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder."); *Maillet v. ATF-Davidson Co.,* 407 Mass. 185 (Mass. 1990) (lack of privity between plaintiff and defendant does not bar recovery under c.93A); *Katter v. Demoulas,* 433 Mass. 1, 14-15 (2000) ("parties need not be in privity for their actions to come within the reach of ch. 93A"); *Malonson v. Arsenault*, 2004 WL 100550, at * 3 (Mass. Super. Ct. 2004) (93A does not require that the plaintiff have any contractual relationship with the defendant); *Green v. Sirichie Acquisition Co. LLC,* 2022, No. CV 21-11504-GAO, 2022 WL 4540983 (D. Mass. 2022) ("an individual need only allege that he was injured by a defendant's wrongful act to bring a 93A claim; privity of contract with the defendant is not required").

Rather than requiring privity, a claim under ch. 93A must simply arise out of the conduct of business, trade, or commerce. §2(a). Plaintiffs inescapably allege that 3M's unfair and deceptive conduct arose out of the sale, trade, and commercial transaction of the PFAS which the PMDs incorporated into their products – and which contaminated the ground, water, and the products sold at Mass Natural. *SAC* ¶ 16 ("Defendant 3M manufactured and sold PFAS to defendant paper manufacturers and other entities that was used at Defendants' facilities… that contaminated the private property of putative class members"); ¶¶ 63, 488, 494 ("Defendant 3M developed, tested,

assembled, manufactured, packaged, labeled, prepared, distributed, marketed, and supplied PFAS and other toxins for sale and sold such products to Defendants…"); ¶¶ 497, 505 ("Defendant 3M engaged in testing, developing, designing, marketing, distributing, manufacturing, promoting, and selling PFAS and other toxins used at the Seaman Paper, Greif, Newark and Caraustar facilities and elsewhere by Defendants."); ¶ 506 ("As a manufacturer and seller of PFAS…"); and ¶ 519 ("Defendant 3M engaged in deceptive or unfair acts or practices in the conduct of trade or commerce…"). Further, certain Plaintiffs also allege that PFAS contaminated their property via loam or compost purchased from Massachusetts Natural Fertilizer, Inc., another transaction arising out of business, trade, or commerce. *Id.* ¶¶ 194, 197, 199, 202, 211, 226, and 518.

Finally, 3M's reliance on *Swenson v. Yellow Transportation, Inc.* is not informative here. 317 F. Supp. 2d 51 (D. Mass. 2004). In *Swenson*, far afield from the case at hand, the court found that there was no violation of ch. 93A because the decision to drive recklessly did not occur in the conduct of trade, business, or commerce – *i.e.*, it was outside a business context. The same cannot be argued here. The SAC, as demonstrated above, is replete with allegations that 3M was involved in the *sale* of PFAS, and that their injuries arose out of 3Ms conduct in those commercial transactions.

Where Plaintiffs have unequivocally alleged that their harm arose out of 3M's business transactions, and where it is clear that under ch. 93A Plaintiffs and 3M do not need to be in direct transactional privity, 3M fails to make out any argument to support dismissal of Plaintiffs' claim.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny 3M's Motion to Dismiss Plaintiffs' well-pleaded Second Amended Complaint and allow this matter to properly proceed.

DATED: April 14, 2023                    Respectfully submitted,

/s/ Ian W. Sloss
Ian W. Sloss (*pro hac vice*)
Sean K. McElligott (BBO# #651710)
Paul A. Slager (*pro hac vice*)
Zachary A. Rynar (*pro hac vice*)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
isloss@sgtlaw.com
smcelligott@sgtlaw.com
pslager@sgtlaw.com
zrynar@sgtlaw.com

J. Tucker Merrigan (BBO #681627)
Victoria Santoro Mair (BBO #679120)
SWEENEY MERRIGAN LAW LLP
268 Summer Street, LL
Boston, MA  02210
tucker@sweeneymerrigan.com
victoria@sweeneymerrigan.com
Telephone: (617) 391-9001
Facsimile: (617) 357-9001

David C. Strouss, BBO#546253
Christian Uehlein, BBO#667325
Leah M. McMorris, BBO#681437
THORNTON LAW FIRM, LLP
One Lincoln St., 13th Fl.
State Street Financial Center
Boston, MA 02111
(617) 720-1333
lmcmorris@tenlaw.com

*Counsel for Plaintiffs Thomas Ryan, Susan Ryan, Sean Gallagher, Ashley Sultan Gallagher, Michele Burt, Christopher Cerasuolo, Nancy Donovan, and Lauren Ladue*

## CERTIFICATE OF SERVICE

I, Ian W. Sloss, hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on April 14, 2023.

/s/ Ian W. Sloss
Ian W. Sloss