**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **THOMAS RYAN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civ. No.: 4:22-cv-40089-MRG** |
| **v.** ) | |
| ) | |
| **THE NEWARK GROUP, INC., et. al.** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**CONSOLIDATED WITH**

| | |
|---|---|
| **THOMAS RYAN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civ. No.: 4:25-cv-40026-MRG** |
| **v.** ) | |
| ) | |
| **EIDP, INC, et al.** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM AND ORDER ON DUPONT ENTITIES' MOTION TO DISMISS**
**[ECF No. 439]**

**GUZMAN, J.**

## I.      INTRODUCTION

Plaintiffs, residents of Westminster, MA, bring this putative class action lawsuit to recover damages for the contamination of their groundwater, which was allegedly caused by the decades-long improper disposal of wastes containing per-and polyfluoroalkyl substances and their constituents (collectively referred to as "PFAS") at the MassNatural recycling and composting

1

facility in Westminster, Massachusetts. [Am. Compl., ECF No. 16]. The present action ("*Ryan II*") is the second lawsuit in a related action stemming from the same underlying facts, see Ryan v. The Newark Grp., Inc., No. 4:22-cv-40089 ("*Ryan I*"). The two actions have been consolidated for the purpose of case management. There are several motions to dismiss pending before the Court; however, this order concerns only the motion brought by the DuPont Entities (i.e., *collectively*, Defendants EIDP, Inc. f/k/a E. I. du Pont de Nemours and Company, DuPont de Nemours, Inc. f/k/a DowDuPont, Inc., The Chemours Company, The Chemours Company FC, LLC, and Corteva, Inc.). The DuPont Entities move to dismiss based on Rule 12(b)(2) lack of personal jurisdiction, as well as Rule 12(b)(6) for failure to state a claim. [ECF Nos. 439, 440]. Plaintiffs oppose the motion, [ECF No. 485] and seek jurisdictional discovery in leave of dismissal should the Court find that personal jurisdiction is lacking against any defendant. [ECF No. 481].

For the reasons stated below, the Court finds that Plaintiffs have failed to meet their burden on establishing this Court's personal jurisdiction over the DuPont Entities, and the motion to dismiss, [ECF No. 439], is **GRANTED**. As the Court lacks personal jurisdiction, it declines to reach the merits of the DuPont Entities' motion to dismiss based on Rule 12(b)(6). Additionally, the Court finds that jurisdictional discovery is not warranted in this matter, and Plaintiffs' motion as to the DuPont Entities, [ECF No. 481], is **DENIED.**

## II.     **BACKGROUND**

### A.  **PFAS6**

PFAS are used in many commercial products due to their ability to repel water, dirt, oil, and grease, resist heat and protect surfaces. [Am. Compl. ¶¶ 29–32]. PFAS also resist biodegradation and are water soluble, making them mobile in groundwater and the environment. [Id. ¶¶ 35–37]. PFAS chemicals are colloquially referred to as "forever chemicals" due to their

ability to persist in the environment and human body indefinitely without breaking down. [Id. ¶ 34]. PFAS are toxic, and human ingestion of PFAS contributes to serious health risks, even at low levels. [Id. ¶¶ 40–46]. "PFAS6" refers to six specific PFAS compounds regulated by the Massachusetts Department of Environmental Protection ("MassDEP"), including (1) PFOS; (2) PFOA; (3) perfluorohexane sulfonic acid (PFHxS); (4) perfluorononanoic acid (PFNA); (5) perfluoroheptanoic acid (PFHpA); and (6) perfluorodecanoic acid (PFDA).[1] [Id. ¶ 50]. While PFAS are not illegal compounds, they are highly regulated.

### B. **PFAS Contamination**

The named Plaintiffs are residents of Westminster, Massachusetts who allege that Defendants are liable for the PFAS contamination of Plaintiffs' drinking water and properties. [Am. Compl. ¶¶ 408–51]. Plaintiffs allege that Massachusetts Natural Fertilizer Company, Inc. ("MassNatural") operated a commercial composting facility in Westminster, Massachusetts on Otter Farm ("the Facility") where it received organic byproduct from outside sources and suppliers, including materials that allegedly contained certain PFAS substances. [See id. ¶¶ 205–63]. Plaintiffs allege that MassNatural improperly disposed of the organic waste it received at the Facility, leading to PFAS leaching into the soil and nearby water sources, thereby contaminating Plaintiffs' land and drinking water. [Id. ¶ 262–66]. Plaintiffs allege that the DuPont Entities contributed to the release of PFAS at MassNatural by manufacturing and supplying the PFAS compounds that were incorporated into other Defendants' products and ultimately disposed of at MassNatural. [Id. ¶¶ 116, 120].

### C. **The DuPont Entities**

---

[1] This Order will refer to the compounds collectively as "PFAS" where there is no reason to discuss a single compound with specificity.

EIDP, Inc., DuPont de Nemours, Inc., The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., are collectively referred to as the "DuPont Entities." The DuPont Entities are major players in the chemical manufacturing industry, designing, manufacturing, marketing, selling and/or distributing PFAS throughout the United States starting in at least the 1940s. [Id. ¶ 116]. The DuPont Entities used PFOA in multiple products, including food packaging, nonstick coatings, industrial applications, paper, paint, and coatings. [Id. ¶¶ 23–38]. In the 1960s, the DuPont Entities introduced Zonyl RP as a grease-resistant treatment for paper food packaging, which contained PFAS precursors. [Id. ¶ 241]. In the 1980s, the DuPont Entities started marketing Zonyl RP to the paint and coating industries, where Defendants Rust-Oleum Corporation ("Rust-Oleum") and Ball Corp. ("Ball") operate. [Id. ¶ 251]. Prior to 2002, another company, 3M, was the dominant global producer of PFOA, one of the most widely used PFAS chemicals. [Id. ¶ 88] After 3M stopped manufacturing PFOA in 2002, the DuPont Entities became the primary manufacturer of PFOA and supplied global markets. [Id. ¶¶ 30, 126–27]. Plaintiffs assert that after 2002, any facility or product using PFOA likely sourced it from DuPont, and that the DuPont Entities maintained exclusive control over the design, manufacture, and distribution of PFOA during the class period. [Id. ¶¶ 235, 247, 254].

Plaintiffs allege that the DuPont Entities have known of the hazards of PFAS to human health and the environment since the 1960s. [Id. ¶ 117]. Internal company documents, regulatory filings, and whistleblower disclosures show that the DuPont Entities have been fully aware of PFOA's persistence, toxicity, and risk to human health for decades. [Id. ¶¶ 236–240]. Plaintiffs bring claims for medical monitoring, negligence, breach of warranty for failure to warn, and violation of Mass. Gen. Laws ch. 21E, § 5 for damages to the Plaintiffs' property incurred as a result of the release of PFAS chemicals from the MassNatural facility.

4

D. **Jurisdictional Facts**

As Defendants challenge the sufficiency of this Court's jurisdiction over them, the Court will now state the relevant jurisdictional facts.

Defendant EIDP, Inc. f/k/a E.I. du Pont de Nemours and Company ("Old DuPont") is a multinational chemical corporation incorporated and headquartered in Delaware. [Id. ¶¶ 9, 116]. Plaintiffs allege Old DuPont manufactured and sold PFAS in the United States starting in the 1940s, including to the Massachusetts Defendants NEFCO, Ball, Rust-Oleum, and *Ryan I* parties Seaman Paper, and Greif/Newark Group. [Id. ¶ 116]. Defendant The Chemours Company (Chemours) is a chemical corporation incorporated and headquartered in Delaware that manufactures PFAS chemicals. [Id. ¶ 11]. Chemours was created after Old DuPont executed a separation agreement in 2015, and Chemours assumed Old DuPont's PFAS business. [Id. ¶ 120]. Plaintiffs allege that Chemours assumed some PFAS-related liabilities of Old DuPont and has continued to manufacture and sell PFAS that were purchased and utilized by the Massachusetts Defendants. [Id. ¶ 120; ECF No. 485 at 20].

Defendant The Chemours Company FC, LLC ("Chemours FC") is incorporated and headquartered in Delaware and is a subsidiary of Chemours. [Id. ¶ 12]. Chemours FC also manufactures certain PFAS chemicals. [Id. ¶ 121].

Defendant DuPont de Nemours, Inc. f/k/a DowDuPont ("New DuPont") is a corporation incorporated and headquartered in Delaware that was formed after the Chemours separation in 2015. [Id. ¶ 10; ECF No. 485 at 21]. Defendant Corteva, Inc. ("Corteva") is spun off from New DuPont and is a corporation incorporated and headquartered in Delaware. [Am. Compl. ¶¶ 13, 122]. Plaintiffs allege that New DuPont and Corteva each hold certain liabilities for Old DuPont's manufacture of PFAS chemicals. [Id. ¶¶ 121, 122; ECF No. 485 at 21]. "Special Products

Liabilities" were assigned to New DuPont, and "Agricultural Liabilities" were assigned to Corteva. [ECF No. 485 at 21]. Those categories allegedly encompass obligations "arising from or alleged to arise from negligence, gross negligence, recklessness, violation of law, fraud, or misrepresentation." [Id.]

Turning now to jurisdictional contacts, Plaintiffs allege that Old DuPont and Chemours sell and distribute their products throughout the United States. [ECF No. 485 at 11]. Plaintiffs also assert that Old DuPont manufactured and sold PFAS to *Ryan I* parties in Massachusetts, including Seaman Paper, Greif/Newark Group and other Defendants in this case, including NEFCO, Ball, and Rust-Oleum. [Am. Compl. ¶ 116]. Further, Plaintiffs claim Chemours manufactured and sold PFAS that were used at other Defendant's facilities which ultimately contaminated the private property of putative class members. [Id. ¶¶ 11, 120]. Plaintiffs also assert, in a single conclusory line, that Corteva does business in Massachusetts. [Id. ¶ 122].

Plaintiffs have not provided any affidavits or external sources to corroborate their allegations that Old DuPont and Chemours sold PFAS to other Defendants within Massachusetts. Nor did Plaintiffs make any specific allegations relating to sales of PFAS from Old DuPont and Chemours to any Defendants, such as which products Old DuPont or Chemours sold, to whom, during what time periods, and whether the products were used in the manufacturing plants and other facilities at issue here. For their part, the DuPont Defendants assert in affidavits from relevant DuPont employees that Old DuPont has never "sold any product to Seaman Paper Company, the Newark Group, or NEFCO, and has never sold any product to Ball Corporation or Rust-Oleum relating to their facilities that are at issue." [ECF No. 440 at 12; ECF No. 440-1. Ex. 1]. Defendants further assert in an affidavit that "Chemours has never sold any product to any of the companies

6

alleged by Plaintiffs to have sent PFAS-containing materials to MassNatural." [ECF No. 440 at 12-13; ECF No. 440-2, Ex.2].

Plaintiffs make few allegations regarding the DuPont Entities' contacts with Massachusetts. Defendant Corteva, Inc. is the only DuPont Entity that the Plaintiffs directly allege does business in the Commonwealth of Massachusetts, but Plaintiffs provide no support for that statement. [Am. Compl. ¶ 122]. Plaintiffs generally allege that the DuPont Entities supplied PFAS to manufacturers in the paper and paint industries, but Plaintiffs do not allege that any of the DuPont Entities operated a paper mill or other manufacturing operation in Massachusetts. Plaintiffs do not allege that DuPont disposed of manufacturing byproducts at MassNatural. In a prior order in this case, the Court found that none of the testing related to the Massachusetts Department of Environmental Protection ("MassDEP") investigation identified the DuPont Entities as being responsible for any of the positive PFAS samples at any private Westminster residences or the MassNatural composting facility. [Joinder Order at 10, ECF No. 360]. Plaintiffs do not allege that the DuPont Entities had a direct commercial link to MassNatural's operations. Plaintiffs' theory is essentially that the DuPont entities manufactured PFOA and that by putting it in the stream of commerce, the DuPont Defendants have purposefully availed themselves of the forum state. Defendants argue Plaintiffs' allegations fall short of plausibly showing the DuPont Entities' connection to Plaintiffs' alleged harm. [ECF No. 440 at 7].

### E.  Procedural History

On August 2, 2022, a subset of Plaintiffs initiated the action now-captioned Ryan v. Newark Grp., No. 22-cv-40089-MRG (D. Mass) against defendants 3M, MassNatural, Newark Group, Greif, Inc., Caraustar Industries, Otter Farm, Inc., and Seaman Paper ("*Ryan I*"). On September 1, 2023, Magistrate Judge David Hennessy issued a Report and Recommendations on the *Ryan I*

defendants' respective motions to dismiss the *Ryan I* Second Amended Complaint, mostly denying the *Ryan I* defendants' motions but dismissing certain entities related to The Newark Group for lack of personal jurisdiction. [See *Ryan I*, ECF No. 159]. On December 21, 2023, this Court largely adopted Judge Hennessy's R&R with slight modifications. [See *Ryan I*, MTD Order, ECF No. 181]. On May 13, 2024, some of the Defendants in *Ryan I* sought to amend their answers to assert crossclaims against the DuPont Entities, Ball, Rust-Oleum, NEFCO, and several other non-party proposed defendants. [*Ryan I*, ECF No. 271]. Simultaneously, the Plaintiffs in *Ryan I* moved for leave of Court to file a Third Amended Complaint adding the DuPont Entities, Ball, and Rust-Oleum as defendants to the *Ryan I* action. [*Ryan I*, ECF No. 274].

On November 18, 2024, in a 58-page order, the Court denied the motions to amend because joining the additional parties at that stage, two years into the litigation, would cause undue delay and prejudice the proposed defendants. [Joinder Order, ECF No. 360]. In that Order, the Court noted that the significant passage of time between the filing of *Ryan I* complaint and the joinder motion hindered the proposed defendants' abilities to mount a defense because it is "increasingly difficult for them to conduct reliable, independent testing . . . or to determining if there was any comingling of their materials with materials from other sources [in MassNatural]." [Joinder Order at 31]. The Court also found that Plaintiffs failed to demonstrate "due diligence" in adding the proposed entities, particularly relating to the DuPont Entities. [Id. at 29].

Having been barred from adding the DuPont Entities, Ball, and Rust-Oleum to *Ryan I* by amending their complaint, on February 23, 2025, Plaintiffs decided to file this entirely separate lawsuit against those same entities, as well as the NEFCO Defendants, on the eve of the tolling of the statute of limitations for their claims. See Ryan v. EIDP, INC., No. 4:25-cv-40026-MRG, ECF No. 1 ("*Ryan II*").  After hearing arguments from all parties, the Court consolidated *Ryan I* and

*Ryan II* for purposes of case management. [*Ryan I*, ECF No. 423]. Plaintiffs filed their Amended Complaint in this action on April 22, 2025. [*Ryan II*, ECF No. 16]. The DuPont Entities filed their motion to dismiss on June 30, 2025. [*Ryan I*, ECF No. 439]. Plaintiffs opposed and moved for jurisdictional discovery. [*Ryan I*, ECF Nos. 480, 481]. The DuPont Entities filed an opposition to Plaintiffs' motion for jurisdictional discovery and replied to Plaintiffs' opposition to their motion to dismiss. [*Ryan I*, ECF Nos. 490-491].

### III.    LEGAL STANDARDS

The DuPont Entities move to dismiss under Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ 12(b)(6). [ECF No. 440 at 6]. When faced with a motion to dismiss under both 12(b)(2) and 12(b)(6), a district court should ordinarily decide the 12(b)(2) motion first. Ne. Erectors Ass'n. v. Sec'y of Lab., 62 F.3d 37, 39 (1st Cir. 1995). The plaintiff bears the burden of proffering sufficient facts to establish that a district court has personal jurisdiction over the defendants. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42,50 (1st Cir. 2002). The Court will thus begin its analysis by considering whether it has personal jurisdiction over the Defendants. As detailed below, the Court finds that it does not.

A motion under Rule 12(b)(2) challenges the Court's authority to exercise personal jurisdiction over a defendant. In a 12(b)(2) motion, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). "[A] district court 'may choose from among several methods for determining whether the plaintiff has met [their] burden.'" Id. (quoting Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007)). As the Court makes its determination without first holding an evidentiary hearing, the *prima facie* standard is applied. Motus, LLC v. Cardata Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022).

Under the *prima facie* approach, the court "must accept the plaintiff's (properly documented) evidentiary proffers as true" and construes them in the light most favorable to the plaintiff in determining the adequacy of their jurisdictional claim. Adelson, 510 F.3d at 48 (quoting Foster-Miller, Inc., 46 F.3d at 145). The court will not, however, credit "conclusory allegations" or "conclusory averments" without "evidence of specific facts," and plaintiffs may not "rely on unsupported allegations in their pleadings." Blanding v. FedEx Ground Package Sys., Inc., 722 F. Supp. 3d 12, 15 (D. Mass. 2024) (first quoting Lin v. TipRanks, Ltd., 19 F.4th 28, 33 (1st Cir. 2021); then quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)). Evidence must be produced to support a jurisdictional allegation. Boit v. Gar-Tec Prods, Inc. 967 F. 2d 671, 680 (1st Cir. 1992).

The exercise of personal jurisdiction must be authorized by state statute and consistent with the due process requirements of the United States Constitution. Blanding, 722 F. Supp. 3d at 15. In assessing personal jurisdiction over a non-resident defendant, "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994). Therefore, Plaintiffs must demonstrate that Massachusetts' long-arm statute grants personal jurisdiction and that it comports with the Due Process Clause of the United States Constitution. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009). Although "the reach of the Massachusetts long-arm statute may not be identical to that of the Due Process Clause," the First Circuit has stated that the district court "need not inquire into such distinctions when the plaintiff has not satisfied the constitutional minimum demanded by due process." Connoisseurs Prods. Corp. v. Fresh Finest, LLC, No. 23-CV-11649-AK, 2025 WL 786660, at *6 (D. Mass. Mar. 12, 2025) (citing Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 95 (1st Cir. 2024)).

IV.    **DISCUSSION**

A.  **Due Process**

As required by the Due Process Clause, to subject a nonresident defendant to jurisdiction within a state, the defendant must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). A federal court may exercise general or specific jurisdiction over a defendant. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). General jurisdiction exists "when [a foreign-state corporation's] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Blanding, 722 F. Supp. 3d at 15 (alteration in original) (quoting Goodyear, 564 U.S. at 919). Here, the Plaintiffs argue the Court has specific jurisdiction over Old DuPont, Chemours, and Chemours FC, and successor jurisdiction from Old DuPont over New DuPont, Chemours, and Corteva. [ECF No. 485 at 10, 18]. Because Plaintiffs do not argue that the Court has general jurisdiction over the DuPont Entities, the Court will consider only the Defendants' argument that the Court lacks specific jurisdiction over them and that exercising personal jurisdiction over them would not comport with due process.

For specific personal jurisdiction, the constitutional analysis has three distinct prongs: relatedness, purposeful availment, and reasonableness. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008). As such, the plaintiff must establish: "(1) their claims directly arise out of or relate to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's

courts foreseeable; and (3) the exercise of jurisdiction is reasonable." <u>Knox v. MetalForming, Inc.</u>, 914 F.3d 685, 690 (1st Cir. 2019). Specific jurisdiction may be invoked where "there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 618 (1st Cir. 2001).

The district court does not act as a factfinder on a 12(b)(2) motion; it only accepts properly supported proffers of evidence by a plaintiff as true. <u>Gill v. Nakamura</u>, No. 14-13621-NMG, 2015 U.S. Dist. LEXIS 113822, at *4 (D. Mass. July 24, 2015) (citing <u>Swiss Am. Bank, Ltd.</u>, 274 F. 3d at 619). Plaintiffs must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction" under the Massachusetts long-arm statute and the Fourteenth Amendment. <u>Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.</u>, 825 F.3d 28, 34 (1st Cir. 2016). Unsupported allegations, however, are insufficient to make a *prima facie* showing of personal jurisdiction. <u>Boit v. Gar-Tec Prod, Inc.</u> 967 F. 2d 671, 676 (1st Cir. 1992); <u>see</u> <u>Chlebda v. H. E. Fortna & Bro., Inc.</u>, 609 F. 2d 1022, 1024 (1st Cir. 1979) (observing that it is an "elementary mistake" to take jurisdictional allegations as true and stating, "to establish personal jurisdiction plaintiff must go beyond the pleadings and make affirmative proof." (citation omitted)). The Plaintiff "is obliged to adduce evidence of specific facts." <u>Foster-Miller, Inc. v. Babcock & Wilcox Can.</u>, 46 F. 3d 138, 145 (1st Cir. 1995), <u>see</u> <u>Sawtelle v. Farrell</u>, 70 F. 3d 1381, 1385 (1st Cir. 1995) (holding that an affidavit or other supplementary filings in support of the pleadings would be sufficient).

### 1. **Relatedness**

To satisfy the relatedness prong, plaintiffs must show "a demonstrable nexus between [their] claims and [DuPont's] forum-based activities . . . ." <u>Adelson</u>, 652 F.3d at 81 (quoting <u>Hannon v. Beard</u>, 524 F.3d 275, 280 (1st Cir. 2008)). This is a "flexible, relaxed standard." <u>Pritzker</u>

v. Yari, 42 F.3d 53, 61 (1st Cir. 1994). A defendant "need not be physically present in the forum state" to engage in forum-based activities. N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005). However, "the action must directly arise out of the specific contacts between the defendant and the forum state." Sawtelle, 70 F.3d at 1389.

Plaintiffs attempt to demonstrate a nexus by alleging that Old Dupont and Chemours sold PFAS products to various parties alleged to have sent waste to the MassNatural site. [Am. Compl. ¶¶ 11, 116, 120]. The DuPont Entities challenge these assertions, stating Old DuPont has "never sold any product to Seaman Paper Company, the Newark Group, or NEFCO, and has never sold any product to Ball Corporation or Rust-Oleum relating to their facilities that are at issue in this litigation." [ECF No. 440 at 12]. Similarly, the DuPont Entities assert that relatedness is lacking for Chemours because it "has never sold any product to any of the companies alleged by Plaintiffs to have sent PFAS-containing materials to MassNatural." [Id.] The DuPont Entities support these statements with affidavits from executives and counsel for Old DuPont and Chemours. [See ECF No. 440-1; ECF No. 440-2]. The Defendants point out that Plaintiffs "do not proffer a single specific fact to support these bare allegations." [ECF No. 440 at 12]. It is true that Plaintiffs pleaded no facts as to which products Old Dupont or Chemours sold, to whom, during what time periods, and whether the products were used in the mills and other facilities at issue in this litigation.

Rather than contradict the DuPont Defendants' disavowal of any sales to any relevant party in Massachusetts,[2] the Plaintiffs sidestep the argument and instead cite to Ford Motor Co. v. Mont.

---

[2] On a 12(b)(2) motion, the Court "may consider 'the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record,' including a defendant's offerings." Groma, LLC v. BuildRE, LLC, 668 F. Supp. 3d 40, 45 (D. Mass. 2023) (quoting Baskin-Robbins, 825 F. 3d at 34). A defendant may also offer evidence; however, "the defendant's evidentiary proffers only 'become part of the mix . . . to the extent that they are uncontradicted.'" Id. (quoting Adelson, 510 F.3d at 48); see Baskin-Robbins, 825 F.3d at 34 ("We may, of course,

Eighth Judicial Dist. Court, 592 U.S. 351 (2021), for the proposition that a corporations' service of "a global market for their products, which includes Massachusetts" is sufficient to establish relatedness to the forum state. [ECF No. 485 at 14].

Plaintiffs' reliance on Ford is misplaced as the case is distinguishable. In Ford, the plaintiffs were the forum states' residents and were injured while driving Ford vehicles. Ford, 592 U.S. at 356. The Ford plaintiffs could not make a showing that the vehicles were manufactured or sold in the forum states where they were injured. Id. Defendant Ford moved to dismiss the case for lack of personal jurisdiction, alleging that there was no causal link between the company's conduct in the states and the plaintiffs' claims. Id. While Ford did not design, manufacture, or sell the specific automobile at issue within the forum states, the Supreme Court found that "Ford did substantial business in the State[s]—among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective . . . [and did] not contest that it does substantial business in [the States]." Id. at 354, 361. By doing so, the Court concluded that Ford "purposefully" seeks to "serve the market" and encourages residents in the forum States "to drive Ford vehicles." Id. at 357. The Court rejected Ford's argument against personal jurisdiction and found Ford's other activities in the forum states beyond sales of the automobile were sufficient to support specific jurisdiction. Id. at 357–58.

Here, Plaintiffs' claims fall short of showing any of the DuPont Entities engage in substantial business in Massachusetts as Ford did in the forum states. In its opposition to

---

take into account undisputed facts put forth by the defendant."). Further, "[f]acts asserted in a defendant's affidavits are not deemed disputed 'merely because [the party opposing the dismissal], in an unsworn brief or in argument before a court, challenges them.'" Groma LLC, 668 F. Supp. 3d at 45 (quoting Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 56 (1st Cir. 2020) (second alteration in original)). Here, the Court finds Plaintiffs have not contradicted the DuPont Defendants' disavowal of sales to any named party in *Ryan I* or *Ryan II*.

Defendant's motions to dismiss for lack of personal jurisdiction, Plaintiffs again reiterate the conclusory allegation that Old DuPont manufactured and sold PFAS chemicals to Massachusetts Defendants and non-parties, and that Chemours manufactured and sold PFAS that were used at Massachusetts Defendant's facilities. [ECF No. 485 at 11]. Unlike the plaintiffs in <u>Ford</u>, who identified specific facts showing that Ford extensively targeted and served the forum markets, Plaintiffs here offer no allegations that any DuPont entity engaged in comparable conduct in Massachusetts. Plaintiffs also assert that, based on its dominant market share after 2002, DuPont likely manufactured the PFAS that injured them; however, Plaintiffs fail to draw any connection to how DuPont's PFAS ended up in Massachusetts. Accordingly, Plaintiffs cannot satisfy the relatedness prong for specific jurisdiction.

## 2. <u>Purposeful Availment</u>

As to purposeful availment, the First Circuit's decision in <u>Boit v. Gar-Tec Prods, Inc.</u> 967 F. 2d 671 (1st Cir. 1992) is particularly instructive. In <u>Boit</u>, a homeowner in Maine brought a products liability action after a hot air gun allegedly caused a fire in her home. <u>Id.</u> at 673. The gun had been used by a contractor performing work on the plaintiff's home, who testified that he ordered the tool after seeing it advertised in a Brookstone catalog. <u>Id.</u> at 674. The product was labeled "Gar-Tec," shipped in packaging that included an operator's manual bearing the same name, and the manual directed warranty inquiries to Gar-Tec. <u>Id.</u> Gar-Tec moved to dismiss for lack of personal jurisdiction, asserting that it had never conducted business, advertised, or sold products in Maine, and that it did not manufacture the hot air gun at issue. <u>Id.</u>

The district court sided with Gar-Tec, holding specifically that the record "*does not contain any information of evidentiary quality* establishing that the defendant sold and distributed the hot air gun at issue to Brookstone." <u>Id.</u> On appeal, the First Circuit affirmed, holding that neither the

15

plaintiff's allegations nor the contractor's affidavit supported an inference that "Gar-Tec sold the gun wholesale directly to Brookstone." Id. at 680. The court noted "nothing in the record before the district court indicates where the hot air gun went after it left Gar-Tec's possession," and that "the record no more supports an inference that Gar-Tec sold the hot air gun directly to Brookstone than it does an inference that Gar-Tec sold to another company without knowledge that it might sell to Brookstone." Id.

The Boit plaintiff argued that allegations that are not expressly controverted by affidavits must be accepted as true, but the court clarified that a *prima facie* showing of personal jurisdiction "must be based on specific facts set forth in the record." Id. Because the plaintiff's allegation that Gar-Tec sold the hot-air gun to Brookstone directly was "the cornerstone of their contention that Gar-Tec should have 'reasonably anticipated being haled' into court in Maine," and that allegation was "wholly unsupported by the record," the plaintiff failed to make a *prima facie* showing of specific jurisdiction and the court affirmed dismissal for lack of specific jurisdiction. Id.

The Court concludes for similar reasons that Plaintiffs here have not made the requisite *prima facie* showing of personal jurisdiction over the DuPont Defendants. The same deficiency in the Boit plaintiff's allegations is even more pronounced here. Plaintiffs offer no affidavits, testimony, or other evidence establishing that any DuPont Entity purposefully directed its conduct toward Massachusetts or transacted business in this forum state. Plaintiffs' opposition merely reiterates conclusory allegations that Old DuPont manufactured and sold PFAS chemicals that were ultimately used at facilities within the Commonwealth, and that the Chemours defendants had manufactured other PFAS chemicals. [ECF No. 485 at 11; Am. Compl. ¶¶ 116– 23]. Those assertions mirror the kind of unsubstantiated claims the First Circuit found inadequate in Boit. Additionally, neither the Amended Complaint nor Plaintiffs' opposition identifies facts showing

that the DuPont entities purposefully directed sales, marketing, or distribution activities toward Massachusetts, or otherwise cultivated a Massachusetts market for PFAS products. Plaintiffs have failed to satisfy the purposeful availment prong for specific jurisdiction.

### 3. Reasonableness

Under the due process framework, failure of any prong dooms the plaintiff's efforts to establish personal jurisdiction. Scottsdale Cap Advisors Corp. v. Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018) (citing A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016)). As the Court has concluded Plaintiff neither met their burden to establish a *prima facie* basis for relatedness or for purposeful availment, the inquiry into reasonableness need not be continued.

Because Plaintiff's allegations rest entirely on speculation and conclusion rather than specific jurisdictional facts, they have failed to meet their burden of establishing a *prima facie* basis for personal jurisdiction, and dismissal is warranted under Boit and Rule 12(b)(2). See Boit, 967 F. 2d at 680–81.

### V.  JURISDICTIONAL DISCOVERY

Should the Court find it lacks personal jurisdiction over the DuPont Entities, Plaintiffs move for leave to conduct limited jurisdictional discovery. [ECF No. 481 at 2]. Although Plaintiffs contend that their opposition briefing demonstrates a *prima facie* showing of jurisdiction, the Court, as noted above, has already concluded that Plaintiffs have not carried that burden. In their motion for jurisdictional discovery, Plaintiffs specifically seek "(1) the full extent of the Dupont Defendant's contacts with Massachusetts, [and] (2) the full extent of EIDP, Inc.'s liabilities assumed by the Chemours Company, DuPont de Nemours, Inc. and Corteva, Inc." [Id.] Defendants argue that jurisdictional discovery is unwarranted because Plaintiffs do not dispute the facts

17

contained in Defendant's declarations, which establish Defendants' lack of relevant contacts with Massachusetts. Defendants further assert that jurisdictional discovery would merely be a "fishing expedition" that only serves to delay and complicate this litigation. [ECF No. 490 at 5]; see Sun Life Assur. Co. of Can. v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 193 (D. Mass. 2012). The Court agrees with the Defendants.

It is well-settled in the First Circuit, that "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Swiss Am. Bank, Ltd., 274 F.3d at 626 (quoting Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir.1997)). To earn such relief, a plaintiff must first meet the standard from Swiss Am. Bank, i.e they must demonstrate diligence and a colorable case for the existence of *in personam* jurisdiction. Id.; Ericson v. Conagra Foods, Inc., No. 1:20-cv-11022-ADB, 2020 U.S. Dist. LEXIS 219813, at *22-23 (D. Mass. Nov. 24, 2020). Diligence includes requesting discovery in a timely manner, Grand Encampment of Knights Templar of U.S. v. Conf. of Grand Masters of Masons in N.A., Inc., No. 11-CV-463-JD, 2012 WL 33017, at *1 (D.N.H. Jan. 5, 2012), as well as "the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted," Swiss Am. Bank, Ltd., 274 F. 3d at 626 (citing Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001)). Though the threshold to make a "colorable claim" is "low," the plaintiff "must identify a non-frivolous dispute about facts that may yield a sufficient predicate for" jurisdiction. Motus,, 23 F.4th at 128 (1st Cir. 2022). "Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request." Swiss Am. Bank, Ltd., 274 F.3d at 626-27 (citing Crocker v. Hilton Int'l Barb., Ltd., 976 F.2d 797, 801 (1st Cir. 1992)). In other words, jurisdictional discovery is only

appropriate if "a party demonstrates that it can supplement its jurisdictional allegations through discovery." Momenta Pharms., Inc. v. Amphastar Pharms., Inc., 841 F. Supp. 2d 514, 518 (D. Mass. 2012). "Courts in this district have routinely denied jurisdictional discovery requests where plaintiffs fail to allege facts demonstrating that jurisdiction would be found if discovery were permitted or where plaintiffs have failed to identify with specificity what information they seek." Ericson, 2020 U.S. Dist. LEXIS 219813, at *23 (citing cases).

While a plaintiff may be entitled to jurisdictional discovery should they meet the standards articulated above, the First Circuit is also clear that a plaintiff's entitlement "is not absolute." Swiss Am. Bank, Ltd., 274 F. 3d at 625 (quoting Sunview, 116 F.3d at 964). "[E]ven when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required." Ericson, 2020 U.S. Dist. LEXIS 219813, at *22-23 (quoting Swiss Am. Bank, Ltd., 274 F. 3d at 625). Indeed, "[t]he standard for reversing a district court's decision to disallow jurisdictional discovery is high," Swiss Am. Bank, Ltd., 274 F. 3d at 626, requiring "a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Id. (emphasis removed) (quoting Crocker, 976 F.2d at 801).

Plaintiffs' request for jurisdictional discovery for DuPont is denied for three primary reasons. First, Plaintiffs have not demonstrated the requisite diligence. Plaintiffs filed their motion for jurisdictional discovery on August 8, 2025, four months after they filed their amended *Ryan II* complaint, one year after the Court denied their motion for joinder as to the DuPont Entities, and nearly three years after the initial *Ryan I* filing. As the Court previously observed in denying the motion for joinder, Plaintiffs' claims against DuPont rest on the same theory as their claims against 3M: that DuPont, as one of the world's most well-known chemical manufacturers, contributed to

the PFAS contamination that injured Plaintiffs by manufacturing the PFAS chemicals directly. [Joinder Order at 29]. The Court pointed out previously that DuPont and 3M have been frequently named together as co-defendants in similar PFAS litigations across the country.[3] [Id.] These cases should have put Plaintiffs on notice that DuPont could be a defendant like 3M. Further, this is not the first time the DuPont Entities have challenged personal jurisdiction in a PFAS case. See, e.g., Suez Water N.Y., Inc. v. E.I. du Pont de Nemours & Co., 578 F. Supp. 3d 511 (S.D.N.Y. 2022) (finding personal jurisdiction over DuPont where Plaintiffs alleged specific DuPont entities engaged in "repeated direct sales into New York to New York customers, over a lengthy and continuous period of time"); Sacramento Suburban Water Dist. v. 3M Co., No. 2:22-cv-01005-KJM-JDP, 2022 U.S. Dist. LEXIS 205600, at *11 (E.D. Cal. Nov. 10, 2022) (finding no personal

---

[3] 3M has been named as a co-defendant with DuPont in at least twelve PFAS lawsuits since 2017. See Banks v. E.I du Pont de Nemours & Co., No. 19-1672-MN-JLH, 2022 U.S. Dist. LEXIS 138661, at *1 (D. Del. Aug. 4, 2022) (Complaint filed 5/17/19, Order issued 8/4/22); N.J. Dep't of Envtl. Prot. v. E.I. du Pont de Nemours & Co., Nos. 19-14766,; 19-14767, 2021 U.S. Dist. LEXIS 247973, at *1 (D.N.J. Dec. 30, 2021) (Complaint filed 7/5/19, Order issued 12/30/21); Orange County Water Dist. v. 3m Co., No. 30-2020-01172419-CU-PL-CXC, 2021 Cal. Super. LEXIS 82156, at *1 (Cal. Super. Apr. 16, 2021) (Complaint filed 12/1/20, Order issued 4/16/21); Utils. Bd. of Tuskegee v. 3M Co., No. 2:22-CV-420- WKW, 2023 U.S. Dist. LEXIS 21983, at *1 (M.D. Ala. Feb. 9, 2023) (Complaint filed 7/17/22, Order issued 2/9/23); Weatherford v. E.I. Dupont de Neumous & Co., No. 4:22-cv-01427-RBH, 2023 U.S. Dist. LEXIS 237047, at *1 (D.S.C. Sept. 27, 2023) (Complaint filed 5/3/22, Order issued 9/27/23); Andrick v. St-Gobain Performance Plastics Corp., No. 1:17 CV-1058 (LEK/DJS), 2018 U.S. Dist. LEXIS 103594, at *1 (N.D.N.Y. June 21, 2018) (Complaint filed 9/21/17, Order issued 6/21/18); Wickenden v. Saint-Gobain Performance Plastics Corp., No. 1:17 CV-1056 (LEK/DJS), 2018 U.S. Dist. LEXIS 103591, at *1 (N.D.N.Y. June 21, 2018) (Complaint filed 9/21/17, Order issued 6/21/18); Lucey v. St.- Gobain Performance Plastics Corp., No. 1:17-CV-1054 (LEK/DJS), 2018 U.S. Dist. LEXIS 97400, at *1 (N.D.N.Y. June 11, 2018) (Complaint filed 9/21/17, Order issued 6/11/18); Baker v. Saint-Gobain Performance Plastics Corp., 632 F. Supp. 3d 19 (N.D.N.Y. 2022) (Complaint filed 7/27/16, Order issued 9/30/22; State v. 3M Co., No. 216-2019-CV-00445, 2020 N.H. Super. LEXIS 29, at *1 (N.H. Super. June 25, 2020) (Order issued 6/25/20); City of Stuart v. 3M Co. (In re Aqueous Film-Forming Foams Prods. Liab. Litig.), No. 2:180-cv-3487-RMG, 2023 U.S. Dist. LEXIS 88928, at *1 (D.S.C. May 19, 2023) (Complaint filed 12/7/18 Order issued 5/19/23); Vermont v. 3M Co., No. 2:24-cv-19, 2024 U.S. Dist. LEXIS 67268, at *1 (D. Vt. Apr. 12, 2024) (Complaint filed 1/3/24, Order issued 4/12/24).

jurisdiction over DuPont where Plaintiffs relied on conclusory allegations that DuPont "produced . . . marketed and sold PFAS products throughout the United States, including in [the forum state]"). Plaintiffs could have referred to the filings in those cases to inform their own pleadings and avoid making missteps in alleging personal jurisdiction against DuPont.  Instead, Plaintiffs made conclusory and limited allegations about individual DuPont Defendants and engaged in shotgun pleading as to the DuPont Entities overall. Plaintiffs have had plenty of time and resources to enhance their allegations against the DuPont Entities.

Second, Plaintiffs have failed to make the threshold "colorable" showing necessary to justify jurisdictional discovery. As explained above, neither the Amended Complaint nor the opposition sets forth specific, nonconclusory facts establishing that any DuPont entity purposefully availed itself of the privilege of conducting activities in Massachusetts. Instead, Plaintiffs' jurisdictional theory rests on conclusory statements and speculation. Plaintiff's request for discovery falls short of meeting the standard established by Platten and Swiss American Bank, as Plaintiffs present no facts, no specific avenue of inquiry, and no argument about why jurisdiction would be found if discovery were permitted.

Finally, the motion is denied because it would delay the case. This litigation is more than three years old. *Ryan I* and *Ryan II* have been consolidated for case management and *Ryan I* is essentially on hold at the class certification stage while *Ryan II* moves through motions to dismiss and discovery. To allow Plaintiffs additional time to discover DuPont's contacts with the forum state would unreasonably delay resolution of this matter overall.

Given Plaintiffs' lack of diligence, their failure to allege specific contacts they are seeking to discover, and the delay presented by additional discovery, the Court **DENIES** the motion for jurisdictional discovery, [ECF No. 481].

## VI.    **CONCLUSION**

For the foregoing reasons, The DuPont Entities' Motion to Dismiss [ECF No. 439] is **GRANTED** and Plaintiff's Motion for Jurisdictional Discovery as to the DuPont Entities [ECF No. 481] is **DENIED**.

**SO ORDERED.**

Dated: December 30, 2025

 _/s/ Margaret R. Guzman_
Margaret R. Guzman
United States District Judge